JOHNSON v. MASTERSON et al.　(No. 7100.)

(Court of Civil Appeals of Texas. Galveston. April 21, 1916. On Motion for Rehearing by Appellee, June 14, 1916. On Motion for Rehearing by Appellant, March 22, 1917.)

1. DEEDS ⬤⇒208(1)—DELIVERY—SUFFICIENCY OF EVIDENCE.

In a suit of trespass to try title and to recover rents, evidence *held* insufficient to raise the issue of the nondelivery of the deed to the land by the deceased owner to plaintiff, his son.

[Ed. Note.—For other cases, see Deeds, Cent. Dig. §§ 625, 630.]

2. EVIDENCE ⬤⇒390(1)—PAROL EVIDENCE AFFECTING WRITING—DEEDS.

In trespass to try title, where the court in submitting the question properly assumed delivery of the deed to plaintiff by the owner of the land, the legal effect of the execution and delivery of the deed could not be changed by a jury finding that the owner did not intend that the deed should pass title until his death, since, when actual delivery of a deed is shown, the deed defines its purpose, and cannot be contradicted except upon ground of fraud, accident, or mistake.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1719, 1720.]

3. MORTGAGES ⬤⇒258—BONA FIDE PURCHASER OF NOTE—FORECLOSURE OF LIEN.

An innocent purchaser of notes, secured by a deed of trust upon land, who acquired the instruments in due course before maturity, paying value to a party who had no notice when he purchased of the existence of the deed to the land from the maker of the notes to his son, or notice of any defense to the notes, was entitled to protection as an innocent purchaser for value, and to have his lien foreclosed in the son's suit to recover title, possession, and rental value.

[Ed. Note.—For other cases, see Mortgages, Cent. Dig. §§ 689–691.]

On Motion for Rehearing Filed by Appellant.

4. MORTGAGES ⬤⇒258—INNOCENT PURCHASER FOR VALUE—CONSIDERATION:

While cancellation of a pre-existing debt is not alone sufficient consideration to protect the purchaser or mortgagee against a prior title of which he had no notice, if, in addition, some other consideration of value is given for the execution of the deed or mortgage, the person claiming under the instrument is protected as an innocent purchaser.

[Ed. Note.—For other cases, see Mortgages, Cent. Dig. §§ 689–691.]

Appeal from District Court, Brazoria County; Sam'l J. Styles, Judge.

Suit by B. L. Johnson, Jr., by next friend, Amanda Whitfield, against H. Masterson and others. From judgment for defendants, plaintiff appeals. Reversed and rendered in part, and reversed and remanded in part.

John B. Warren, of Houston, for appellant. H. Masterson, of Houston, Masterson & Rucks, of Angleton, and Ewing Boyd, of Houston, for appellees.

PLEASANTS, C. J. Amanda Whitfield, suing as next friend of B. L. Johnson, Jr., brought this suit against H. Masterson, Bassett Blakely, A. E. Masterson, administrator of the estate of B. L. Johnson, deceased, and H. Bingham, to recover the title and possession of two tracts of land on the A. Robinson survey in Brazoria county, containing in the aggregate 102 acres, and the reasonable rental value of said land for the years 1912 and 1913, which is alleged to be the sum of $750 per year. In addition to the usual allegations in a suit of trespass to try title and for recovery of rents, plaintiff's petition alleges, in substance, that the defendant E. A. Masterson wrongfully and unlawfully inventoried the land in controversy as part of the estate of B. L. Johnson, deceased, and took possession of same, and that all of the defendants maliciously conspired to defraud plaintiff out of his land and the rents and revenues arising therefrom by obtaining from the probate court an order of sale therefor as the property of said estate, under which order a pretended sale was made to defendant Bassett Blakely, and that thereafter said Blakely and H. Masterson pretended to sell said land to defendant Bingham.

Plaintiff further avers that the obtaining of letters of administration on said B. L. Johnson's estate by said Masterson and the subsequent inventory of the plaintiff's land as a part of the estate of B. L. Johnson, Sr., by said Masterson, and the subsequent sale thereof by said probate court to Bassett.

Blakely was maliciously instigated and accomplished by said Masterson in conspiracy with the defendants H. Masterson, Bassett Blakely, and Geo. H. Bingham, to obtain possession of said land and slander the title of plaintiff thereto, the said defendants knowing that plaintiffs were ignorant colored people, without means other than said land, and without influence to obtain assistance in the assertion of their rights, and believing that by so doing the plaintiff would yield the possession of said land to them and cease to assert his right thereto.

It is further alleged that in pursuance of said conspiracy to defraud plaintiff of his said land, the defendant E. A. Masterson, aided and abetted by the other defendants, after he had conveyed said land to defendant Blakely file complaint in the probate court of Brazoria county, falsely charging plaintiff's mother, Amanda Whitfield, with interfering with the possession of said administrator and refusing to vacate said land, and induced said court to fine said Amanda Whitfield the sum of $50 for contempt of court and order her held in custody by the sheriff of Brazoria county until such fine was paid, from which custody she was only released by habeas corpus proceedings brought in the district court of said county.

Because of said alleged wrongful and malicious acts of defendants, plaintiff alleged that they are liable to him in the sum of $1,-500 actual and $5,000 exemplary damages. The prayer of the petition is for an injunction restraining defendants from further interfering with plaintiff's possession and use of the land with his said mother and minor sisters and brothers; that he recover the title and possession of said land with his actual and exemplary damages, and that the order of the probate court, directing the sale of said land and the deeds from the administrator to Bassett Blakely and from Blakely to defendant Bingham, be each and all canceled as clouds upon plaintiff's title.

The defendants, in addition to general special denials of all of the material allegations of plaintiff's petition, pleaded in full the facts in regard to the sale of the land by the probate court of Brazoria county for payment of indebtedness due by B. L. Johnson, deceased, and secured by liens on said land, and averred that said land was the property of said estate, and the orders of said court allowing said indebtedness and ordering the sale of said land in satisfaction thereof were regularly and properly made and the title to said land by said order and sale became, thereby vested in defendant Bingham.

The defendant H. Masterson pleaded in the alternative that in event it should be found that said land was not the property of the estate, he be protected as innocent purchaser of the indebtedness which was secured by a lien on said land, and his lien for the amount of such indebtedness as fixed by the order of the probate court be established and foreclosed.

The cause was submitted to a jury in the court below upon special issues, and upon the return of the verdict judgment was rendered in favor of defendants.

The evidence shows the land in controversy was owned by B. L. Johnson prior to December 8, 1908. He had lived upon the land for some years prior to said date and portions of it were occupied and cultivated by tenants. He was unmarried, but had cohabited for a number of years with Amanda Whitfield, a negress, and had had several children by her. She and her children lived on this land in the same house in which Johnson lived. He had often, prior to the date last mentioned, told Amanda that he intended to give this place to his son, B. L. Johnson, Jr., who was also Amanda's son, and at the time mentioned about 10 years old. On December 8, 1908, he signed and acknowledged a deed with general warranty of title which was written for him by Mr. A. R. Hamblen, of Houston, and by which, for the recited consideration of $1 and love and affection for his son, B. L. Johnson, Jr., he conveyed to his said son the property in controversy.

It is shown by the undisputed testimony of Amanda Whitfield, her mother, Lucy Cole, plaintiff, B. L. Johnson, Jr., a man named Alex Langston, and a sister of plaintiff who was at that time about 15 years old, that when B. L. Johnson came home from Houston on December 8, 1908, he brought this deed with him, and called the plaintiff, B. L. Johnson, Jr., to him and gave him the deed, telling him it was a deed of gift to the property. The boy tried to read the deed, but read it so slowly that Johnson took it from him and read it to him, after which he again gave it to him and told him to give it to his mother to keep for him. The boy then handed the deed to his mother, who took it and put it in her trunk, where she kept it until B. L. Johnson purchased an iron safe which he told them was purchased for the boy and which was to be used by all of them. B. L. Johnson had the name of B. L. Johnson, Jr., placed on this safe. On one of the drawers in the safe he had stamped the initials of B. L. Johnson, Jr. He gave the boy the key to this drawer, and the deed was taken from Amanda's trunk and placed in this drawer. The boy or his mother kept the key to this drawer, and the deed was kept therein until after the death of B. L. Johnson, which occurred on February 6, 1912. The deed was found in the safe a day or two after the death of B. L. Johnson by F. E. Pye, and he advised the boy to have it recorded, which was done on February 12, 1912. Mr. Pye and A. C. Barnes, a justice of the peace, testified that the deed was found in this safe after the death of Johnson.

The only evidence relied on by appellees to

sustain a finding that the deed was not delivered by B. L. Johnson to his son is evidence showing that B. L. Johnson up to the time of his death claimed to own the land, rendered it for taxes in his own name, executed deeds of trust thereon, and in order to obtain loans thereon made affidavit that he was the owner, and that it was free from incumbrances.

[1] We agree with appellant that this evidence is insufficient to raise the issue of the nondelivery of the deed.

The issues submitted to the jury and their findings thereon were as follows:

"The court will submit to you only such issues as the court deems proper under the facts of this case.

"Question No. 1. Do you believe from the evidence that the deed from B. L. Johnson to B. L. Johnson, Jr., dated December 8, 1908, was signed, acknowledged, and delivered by the said B. L. Johnson, deceased, with the intention on the part of the said B. L. Johnson, deceased, to then and there pass the title at once to the said B. L. Johnson, Jr., to the land in controversy? You will answer this question 'Yes' or 'no.'

"In reference to question No. 1, I charge you that: If you believe from the evidence that B. L. Johnson, deceased, signed, acknowledged, and delivered to B. L. Johnson, Jr., the deed in evidence dated December 8, 1908, and you further believe that at said time he did so with the intention thereby to pass at once the title to the land therein described to the said B. L. Johnson, Jr., then you will answer question No. 1, 'Yes'; but if you believe from the evidence that B. L. Johnson, deceased, signed, acknowledged, and delivered the deed in evidence, dated December 8, 1908, to the said B. L. Johnson, Jr., and you further believe from the evidence that the said B. L. Johnson, deceased, then and there took possession of said deed and retained the possession and control of same and intended at the time that the title to the said land should not pass to the said B. L. Johnson, Jr., until after his, the said B. L. Johnson's, death, then you will answer question No. 1, 'No.'

"Question No. 2. If you answer question No. 1, 'No,' then answer this question: When do you believe, from the evidence, B. L. Johnson, deceased, intended the said deed to take effect?

"Question No. 3. What do you believe from the evidence was the reasonable rental value of the land in controversy for the year 1912?

"Question No. 4. What do you believe from the evidence was the reasonable rental value of the land in controversy for the year 1913?

"To question No. 1: Answer, No.
"To question No. 2: Answer, At his death.
"To question No. 3: Answer, $750.00.
"To question No. 4. Answer, $400.00."

Upon the return of this verdict appellant filed a motion requesting the court to render judgment in his favor for the title and possession of the land and for the rents as found by the jury.

Appellant's second assignment is as follows:

"The court erred in overruling plaintiff's motion for judgment after the verdict, in that on the verdict and the uncontroverted evidence plaintiff was entitled to judgment for the title and possession of the land in controversy as against the defendants, and for judgment for his rents, in that the uncontroverted evidence showed the execution and delivery of the deed by B. L. Johnson to B. L. Johnson, Jr., prior to his death, and that, Johnson intending the said conveyance as a deed, it was immaterial what the jury might find as to when the said Johnson intended the deed to take effect, as the legal effect of the execution and delivery of the deed in evidence was to place the title to the property in controversy in B. L. Johnson, Jr."

[2] This assignment must be sustained. The verdict of the jury above set out is a finding that the deed from B. L. Johnson to B. L. Johnson, Jr., was signed, acknowledged, and delivered. The court assumed the delivery of the deed in submitting the question to the jury, and this assumption is, as we have before stated, sustained by the uncontradicted evidence. This being so, the legal effect of the execution and delivery of the deed cannot be changed by a finding of the jury that B. L. Johnson did not intend that the deed should pass title until after his death. When the actual delivery of the deed is shown, as in this case, the deed defines its purpose and cannot be contradicted except upon grounds of fraud, accident, or mistake. In cases of this character the intention of the grantor by the execution of the deed can only be a subject of inquiry where there is no actual delivery to the grantee or some one for him. The question of intention is only important on the issue of the execution of the instrument which includes its delivery. Lott v. Kaiser, 61 Tex. 665; McCartney v. McCartney, 93 Tex. 361, 55 S. W. 310; Henry v. Phillips, 105 Tex. 459, 151 S. W. 533.

[3] The evidence in this case further shows that defendant H. Masterson acquired certain notes executed by B. L. Johnson and secured by deed of trust upon this land. He acquired these notes in due course of trade before maturity, and paid value therefor without any notice of the existence of the deed from B. L. Johnson to B. L. Johnson, Jr., or notice of any defense to the notes, if any in fact existed. In these circumstances he is entitled to protection as an innocent purchaser, and to have his lien given to secure said notes, on the land in controversy, foreclosed. We cannot, however, ascertain definitely from the record the exact amount of such indebtedness, and for that reason cannot render judgment in his favor.

It is unnecessary to discuss the various assignments of error presented in appellant's brief.

We do not think the question of exemplary damages was raised by the evidence, and the assignment complaining of the refusal of the trial court to submit that issue cannot be sustained.

It follows from the conclusions above expressed that the judgment of the trial court should be reversed, and judgment here rendered in favor of appellant for the title and possession of the land, subject to the lien thereon held by defendant H. Masterson, and for rents as found by the jury. Judgment for rents for the year 1912 to be against the administrator, and for the year 1913 against defendant Bingham. It is further adjudged

that upon the cross-action of the defendant H. Masterson the cause be remanded for a new trial.

Reversed and rendered in part.

Reversed and remanded in part.

On Motion for Rehearing Filed for Appellee.

In the motion for rehearing filed by appellee H. Masterson, our attention has been called to evidence contained in the statement of facts from which the amount of the indebtedness due him by the deceased, B. L. Johnson, and secured by deeds of trust upon the land in controversy, can be definitely ascertained. The amount of such indebtedness being shown by the record, said appellee is entitled to have his lien upon the land to secure said indebtedness foreclosed, and our former judgment herein will be reformed so as to order such foreclosure and the issuance of an order of sale.

The several motions filed by the other parties to this appeal have each been duly considered and should, in our opinion, be overruled; and it has been so ordered.

On Motion for Rehearing Filed by Appellant.

It is earnestly insisted in a motion for rehearing filed by appellant that we erred in our former opinion herein in holding that appellee Masterson purchased the notes held by him, and for which he seeks a foreclosure upon the land involved in the suit, for value and without notice of appellant's claim to the land. The statement in our main opinion that Masterson had no notice of appellant's claim at the time he purchased the notes is erroneous, and was inadvertently made. He purchased the notes after the deed to appellant had been placed of record, and was therefore charged with notice of appellant's title. He is, however, entitled to protection as an innocent holder because his assignors were purchasers for value without notice.

[4] The uncontradicted evidence shows that Pye, from whom Masterson purchased the $4,000 note, had no notice of appellant's claim at the time he acquired the note, which was before the record of the deed to appellant, and that he paid several hundred dollars in cash for said note in addition to surrendering to B. L. Johnson other notes or claims held against him. That this was a valuable consideration and entitled Pye to protection against the unrecorded deed of appellant is, we think, settled by the decisions of our courts. While the cancellation of a pre-existing debt is not alone a sufficient consideration to protect a purchaser or mortgagee against a prior title of which he had no notice, if in addition to the pre-existing debt some other consideration of value is given for the execution of the deed or mortgage, the person claiming under such instrument is protected as an innocent purchaser for value.

Steffian v. Bank, 69 Tex. 513, 6 S. W. 823; Hardware Co. v. Kaufmann, 77 Tex. 136, 8 S. W. 233; Watts v. Corner, 8 Tex. Civ. App. 588, 27 S. W. 1087.

The other notes held by Masterson were executed by B. L. Johnson for money loaned him by persons who had no notice of the deed to appellants.

We adhere to our former holding that Masterson is, under the undisputed evidence, entitled to a judgment foreclosing the liens given by B. L. Johnson upon the land involved in this suit to secure the payment of the notes held by him.

It follows that the motion for rehearing should be overruled; and it has been so ordered.