## PETER INGENHUETT v. C. P. HUNT ET AL.

Delivered January 20, 1897.

1.   **Attorney and Client.**
   Plaintiff cannot complain because defendant's counsel represents an intervener in an action of foreclosure.

2.   **Parol Evidence of Sale of Land—Nonproduction of Deed.**
   A guardian may properly testify to having consummated a sale of the ward's land in another State, and that she received the consideration, as she cannot be expected to produce the original deed to the purchaser at such sale.

3.   **Trust—Evidence Sufficient to Establish.**
   A trust may be engrafted upon a deed absolute by the evidence of a single witness, where the trust is one not in favor of such witness.

**4.  Same—Violation of—Election of Remedies by Beneficiary.**

The beneficiary of a trust fund may, where the trustee, in violation of his duty, invests such funds in property in his own name, elect whether he will pursue the trustee personally or resort to the property.

**5.   Same—Mingling Trust Funds—Purchase by Trustee.**

A trustee who places to her credit $1500 of the trust fund and the same amount of her own money, and dissipates all the joint fund except $1060 used to purchase land and about $700 in bank, will be declared trustee for the cestui que trust as to the land, if the latter so elects.

**6.   Mortgage--Bona Fide Holder—Consideration.**

A mortgage given for an antecedent debt, for the sole purpose of securing the demand, is without consideration entitling the mortgagee to protection as a bona fide lien holder, although incidentally the time of payment is extended.

ON REHEARING.

**7.   Practice on Appeal—Bill of Exceptions.**

Alleged error in the exclusion of evidence is not available on appeal, where the bill of exceptions fails to show what the objection was.

APPEAL from Kendall.    Tried below before Hon. EUGENE ARCHER.

*Leo Tarleton,* for appellant.—1.    The same counsel will not be permitted in our courts to represent adverse, hostile and antagonistic litigants, even though his principals collusively unite to defeat the claims of another party.    1 Waite's Pr., 213; 1 Daly (N. Y.), 512; 30 How. (N. Y.), 208; 15 Barb. (N. Y.), 650; Puterbaugh, Com. Law Prac., 740.

2.    A resulting trust cannot be established without clear and satisfactory testimony identifying the trust fund, and tracing it into the property to be charged.    Hall v. Layton, 16 Texas, 262; Qualified, 25 Texas, 204; Mead v. Randall, 8 Texas, 191; Agricultural Ass'n v. Brewster, 51 Texas, 257; Richardson v. Hutchins, 68 Texas, 81; Bank v. Weems, 69 Texas, 489; Zundell v. Gess, 73 Texas, 144.

3.    When a mortgagee gives time upon his debt, as a consideration for the security, and yields up for the time of extension his right of action, it is deemed a valuable consideration in law, and such consideration is sufficient to support the claim of an innocent purchaser.    Steffian v. Bank, 69 Texas, 613; Schumpert v. Dillard, 55 Miss., 348; Post v. Embree, 54 Iowa, 14; Carey v. White, 52 N. Y., 138; Gilchrist v. Gough, 63 Ind., 576; Cook v. Parkhurst, 63 Ala., 456; Thomas v. Rembart, 63 Ala., 561.

*Charles J. Gillespie,* for appellees.—1.    The rule is elementary that the giving of a note and mortgage as security for an antecedent indebtedness does not make the mortgagee a purchaser for value, unless he has as a consideration therefor extended the time of payment or given some other consideration for the security.    Where the extension is merely collateral to the purpose of the creditor to obtain security for his debt, he is not a purchaser for value.    Spurlock v. Sullivan, 36 Texas, 511; Bailey v. Pond, 59 Texas, 540; Orme v. Roberts, 35 Texas, 774; McKean v. Sultenfuss, 61 Texas, 325; Bank v. Mortgage Co., 6 Texas

Civ. App., 61; 1 Parson's on Contracts, sec. 469; 5 Waite's Actions and Defenses, 188; Crofut v. Aldrich, 54 Ill. App., 544.

2. Appellee was not required to introduce the whole record. The order of confirmation fully showed the fact that S. M. Hunt was guardian in a probate proceeding pending in said court, and that she had sold under the order of the court the property of appellee, her ward, and that said sale has been confirmed; and these facts proven, it was competent to prove by her the receipt of the purchase price of the said land, and her compliance with the order of confirmation in making title to the purchaser. There are no degrees in secondary evidence and the probate records of Ashley County, Ark., being beyond the jurisdiction of the court, facts proven by them may likewise be proven by parol. Townsend v. Munger, 9 Texas, 309.

3. If a trustee purchases an estate with trust funds, and adds funds of his own to the purchase price, a trust will result to the cestui qui trust, and the burden will be on the trustee to show the amount of his own funds in the purchase, or the cestui qui trust will take the whole. And if the purchase be partly with trust funds and partly not, the cestui has a lien on the whole property for the amount of the funds misapplied. Russell v. Jackson, 10 Hare, 209; McLaren v. Brewer, 51 Me., 402; Seaman v. Cook, 14 Ill., 505; Munro v. Collins, 95 Mo., 42; 1 Perry on Trusts, sec. 128.

JAMES, Chief Justice.—C. P. Hunt became indebted to appellant for goods in the sum of $510.77, and the account being overdue, and appellant insisting on payment or security, it followed that C. P. Hunt and his sister, Mrs. S. M. Hunt, Sr., who lived with him, executed their note to appellant for said sum on January 31, 1891, the latter securing the same by a deed of trust on certain land. The note was given for Hunt's past due debt, and was made payable three years after its date.

On February 21, 1895, Ingenhuett brought this suit to recover on the note, and to foreclose the lien. On March 30, 1896, S. L. Hunt, son of Mrs. S. M. Hunt, Sr., intervened, claiming that the land which his mother had thus mortgaged was his, by virtue of the fact that it had been purchased with funds that belonged to him, and that she held it as trustee for him. The facts alleged and shown in connection with the alleged trust we need not here state. In our opinion, they were sufficient to authorize the conclusion that, as between the son and the mother, the trust existed, and that if Ingenhuett be regarded as not an innocent purchaser, he would stand in no better attitude with respect to the land than intervener's mother.

In reference to the first assignment of error, the propositions advanced by appellant are met by the fact that there was no impropriety in defendants' counsel representing the intervener. There were no issues developed between them. Nor can we see what right plaintiff would have to raise the question.

As we have to reverse the judgment, the second assignment, concerning a cost bond, need not be noticed.

The third and eighth assignments are without merit. The order of the Probate Court in Arkansas, confirming a sale, showed that Mrs. S. M. Hunt was the guardian of her son's estate, and showed a sale of his real estate for the sum she says she caused to be transferred to Texas shortly afterwards. She could not be expected to produce the original deed to the purchaser at such sale and could properly testify to having consummated the sale and received the consideration.

The further point is made under these assignments that a single witness is insufficient to engraft a trust upon an absolute deed. Mrs. Hunt's testimony is solely relied on to establish the trust. The general rule is as appellant states it, and if Mrs. Hunt were endeavoring by her uncorroborated testimony to establish such a trust in favor of herself, it would apply. The rule has been thus restricted in its application by the Supreme court of this State. See Pierce v. Fort, 60 Texas, 471, and case cited.

Another proposition advanced by appellant under the fourth assignment is that the minor does not appear to have lost his remedy for conversion of his money upon the guardian's bond. In cases where one holds a fiduciary relation to another, and in violation of such relation invests the other's funds in property, the beneficiary has the right to elect whether he will pursue the trustee personally or resort to the property.

The testimony complained of in the fourth and fifth assignments would not reverse the judgment, the case having been tried before the court; the other testimony of Mrs. Hunt, which was all the testimony to show the trust, being sufficient to establish it. We will state in another connection, how, as we think, the testimony sustains such conclusion.

There is nothing in the sixth assignment.

The court found that the sole consideration of the note and deed of trust was the antecedent debt of C. P. Hunt; also that Mrs. S. M. Hunt received $1500, the proceeds of the sale of her son's property; that she did with $1060 thereof purchase the land in controversy, taking the title in her own name, as an investment for her son. These conclusions are assailed by the ninth, tenth and eleventh assignments. As stated before, we think the evidence warranted the finding that the trust existed in reference to this land in favor of the son, if, indeed, any other result would be admissible from the testimony. Mrs. Hunt testified that the $1500 of her son's money together with a similar sum of her own, was brought to Texas from Arkansas, and all deposited in a San Antonio bank to her credit. She came early in 1886. She loaned $500 of the mingled bank deposit to her brother, S. P. Hunt, which was repaid. She loaned $300 of it to a nephew in Arkansas, which has never been repaid. She made other loans to her brother, S. P. Hunt, amounting to $900; which he still owes. All these transactions, and the pur-

chase of the land, occurred previous to the date in 1891 when she gave the deed of trust. She had drawn out other sums for her use, and after she purchased this land, she had about $700 left in bank, all of which has been since drawn out by her. There is evidence that tends to show S. P. Hunt insolvent in 1891, and the fact that the nephew in Arkansas has not paid, after the great lapse of time, would imply the same as to him. Therefore we have from this evidence these facts: That in January, 1891, when the deed of trust was given, Mrs. Hunt had wasted and dissipated all of the joint fund except $1060 used to purchase the land and about $700 in bank. It is quite clear in the light of these facts that, in a controversy between the son and the mother, she would be declared trustee for him, if he so elected, in reference to the land and probably to all of the $700, by adding interest to his demand. There was no error, in this respect, in the conclusions of the court.

The next inquiry is, whether or not the plaintiff is entitled to be protected as a lienholder without notice. It is clear that the note extended the time of payment for three years on its face. We are of opinion that where a mortgage is given to secure a past due indebtedness, and as a consideration entering into the transaction the time of payment is extended, the lienholder is protected against unknown equities, for the reason that he has by contract parted with a valuable right. Watts v. Corner, 8 Texas Civ. App., 588; Steffian v. Bank, 69 Texas, 517.

An extension may not be contracted for, and yet given. According to the testimony of S. P. Hunt and Mrs. Hunt, nothing was said about an extension, and the note and mortgage were signed as presented to them by appellant's agent, and there was no other consideration for the note and deed of trust than the past indebtedness; and that the sole purpose of the transaction was to secure appellant's demand. In other words, the fair inference from this testimony is that the note and mortgage were executed without reference to the further time. If this were so, we believe the case would not come within the rule above expressed. If, without any arrangement or stipulation for that purpose, the giving of time by drawing the note payable at three years was the gratuitous act of appellant, not induced or asked by defendants, he could not say that he had, through contract, suspended or surrendered his right to enforce payment of the account. Under such circumstances, he would be regarded as unnecessarily and voluntarily giving further time, when he could as well have had the mortgage without it.

Therefore, so far as this feature of the case goes, we cannot say that the judge erred in his conclusion that the sole consideration was the prior indebtedness.

It was, however, alleged by plaintiff that one of the considerations of the transaction in which the deed of trust was given was that further credit should be extended to Hunt. There was testimony pro and con on this issue. That a further credit was to be given was denied by appellee's witnesses, and affirmed by appellant; but the latter offered to prove this fact, and the fact that the further credit was given, by two

witnesses, who were not permitted to testify on this subject. Their testimony should have been admitted. The court evidently attached no importance to this issue, and it was not referred to in the conclusions, and probably was considered immaterial. We are clearly of opinion that if a further credit was contracted for, and was given, on the strength of the mortgage, in the absence of actual notice of the intervener's claim, this would of itself redeem plaintiff's case from the presumption of notice, and be sufficient to protect him.

The plaintiff filed in the District Court a motion to arrest and set aside the judgment on various grounds appropriate to a motion for new trial. It was not essential to the appeal in this case that there should have been a motion for new trial, or any other form of motion asking the court to reconsider its judgment. Therefore, it matters not whose motion was made in that direction, the right of appeal was not affected.

The judgment is reversed, and the cause remanded.

*Reversed and remanded.*

### ON REHEARING.

The judgment was reversed on one point, based on appellant's ninth bill of exceptions. The bill was taken upon the exclusion of certain testimony of Paul Ingenhuett and one Flock, but fails to show what the objection to the evidence was. The witness Paul Ingenhuett did in fact give his testimony in reference to the matter mentioned in the bill of exceptions, as appears in the statement of facts. The failure of the bill to state the grounds upon which the court based its action has been held fatal to the bill in numerous decisions. See cases collated in note, 1 Sayles' Texas Civil Practice, p. 509.

In this instance, the testimony of the witness Flock may have been hearsay, or it may have been excluded from some other sufficient reason. All presumptions will be indulged in favor of the correctness of the ruling of the court below which may be, when the grounds of the ruling in excluding evidence are not shown by the bill of exceptions. Railway v. Gage, 63 Texas, 575.

We therefore conclude that we erred in considering this bill of exceptions, and in reversing the judgment thereon. As we found no error in other respects, the motion for rehearing is granted, and the judgment of the District Court is affirmed.

*Rehearing granted and judgment affirmed.*

Writ of error refused.

March 3, 1897.