FIRST NAT. BANK OF NAVASOTA v. TODD. (No. 222-3356.)

(Commission of Appeals of Texas, Section A. June 1, 1921.)

**1. Chattel mortgages ⬩139 — "Subsequent mortgagees in good faith" against whom mortgage, unless filed as required, is void, defined.**

Under Rev. St. 1911, art. 5655, declaring that, in absence of change of possession of the property, a chattel mortgage, unless filed in the county where the property is situated or the mortgagor resides, shall be void as against "subsequent mortgagees in good faith," a mortgagee must have advanced a consideration for the mortgage and had no notice of the unrecorded lien, in order to be a mortgagee in good faith.

**2. Chattel mortgages ⬩157(2) — Holder of prior unfiled mortgage claiming superiority held to have burden of proof as to good faith of subsequent mortgagee.**

Where intervener in chattel mortgage foreclosure asserted, as ground for giving preference to his unfiled prior mortgage, that there was no consideration for plaintiff's mortgage and that plaintiff took it with notice of his lien, and plaintiff did not allege that it had advanced a valuable consideration or was without notice of intervener's mortgage, but was content to rely on intervener's failure to prove his case, intervener had the burden of proving his allegations; the fact that proof of a negative allegation was required not changing the rule with reference to burden of proof.

**3. Appeal and error ⬩882(12)—Error in placing burden of proof held not invited.**

Error of instruction in placing the burden of proof on plaintiff, over his objection, is not invited, though plaintiff claimed and was allowed the opening and concluding argument, to which under Rev. St. 1911, art. 1953, the party having the burden of proof is entitled.

**4. Chattel mortgages ⬩139 — Extension of note sufficient consideration as against prior unfiled mortgage.**

If the consideration, or part thereof, for a chattel mortgage, was the extension of the note secured, there is a sufficient consideration to entitle the mortgagee to protection, under Rev. St. 1911, art. 5655, as a subsequent mortgagee in good faith, as against a prior unfiled mortgage.

Error to Court of Civil Appeals of First Supreme Judicial District.

Action by the First National Bank of Navasota against R. A. Barker. Judgment for intervener, J. S. Todd, was affirmed by the Court of Civil Appeals (212 S. W. 219), and plaintiff brings error. Reversed and remanded for new trial.

Lewis & Dean, of Navasota, for plaintiff in error.

I. W. Stephens, of Fort Worth, and T. P. Buffington, of Anderson, for defendant in error.

SPENCER, J. Plaintiff, First National Bank of Navasota, instituted this suit to recover of R. A. Barker upon two notes executed by the latter, one upon January 20, 1916, for the sum of $5,416.20 payable to the bank, the other executed December 1, A. D. 1915, payable to A. P. Terrell in the sum of $441.80, which note had been transferred to the bank; and to foreclose a chattel mortgage lien executed by Barker on January 20, 1916, to secure the payment of these notes.

J. S. Todd intervened, claiming as assignee of Evans Snyder Buell Company, asserting a prior and superior lien to the chattels covered by the mortgage; contending that the bank's lien was inferior to the chattel mort-

gage lien which had been transferred to him, because taken to secure a pre-existing debt without having advanced any new consideration, and with notice by the bank of the superior and equitable right of Evans Snyder Buell Company under the mortgage.

Plaintiff held the note of Barker for the sum of $6,949.30, dated August 20, 1915, and due on November 1, 1915, secured by chattel mortgage executed by Barker upon the same date on 120 steers branded "AB" on the left shoulder—and other live stock not necessary to enumerate—located in Brazos county, Tex., where the mortgage recited that the defendant resided. This mortgage was duly filed in the office of the county clerk on August 20, 1915.

Plaintiff introduced in evidence the mortgage of January 20, 1916, describing 165 steers branded "AB" on the left side, and other cattle, located in Brazos county, Tex. The mortgage recites that it is given in renewal and continuation of the original one, and that 61 head of steers described in the mortgage of August 20, 1915, having been sold, as well as some mules and horses described therein, that the renewal mortgage was taken to include additional live stock to take the place of that sold and traded. This mortgage was filed and registered in the office of the clerk of the county court of Brazos county, Tex., at 2:45 p. m. on January 21, A. D. 1916.

Intervener introduced in evidence the following instruments: (1) Mortgage executed by R. A. Barker, dated January 5, 1916, describing 120 head of steers branded "B" on left thigh. The mortgage recites that the cattle are located in Grimes county, Tex.; that R. A. Barker is a resident of said county; and that the mortgage is given to secure the payment of a note dated January 5, 1916, by R. A. Barker and J. A. Barker in the principal sum of $3,614.31. This mortgage was filed in the office of the clerk of the county court of Grimes county on the 8th day of January, 1916. (2) Mortgage dated January 21, 1916, executed by R. A. Barker, describing 80 head of steers branded "B" on left thigh. The mortgage recites that Barker is a resident of Grimes county, Tex.; that the cattle are located in Brazos county, Tex.; and that it is given to secure the payment of one note for the sum of $2,304.54, executed by R. A. Barker and J. S. Barker, dated January 8, 1916. This mortgage was filed in the office of the county clerk of Grimes county on January 21, 1916. (3) Mortgage executed by R. A. Barker on February 5, 1916, describing 200 head of steers branded "AB" behind the left shoulder. The mortgage recites that R. A. Barker is a resident of Brazos county, Tex.; that the cattle are located in said county; and that it is given in lieu of the two previous mortgages, but with no intention of impairing or in any wise affecting the same. This mortgage was filed in the office of the county clerk of Brazos county, Tex., on February 5, 1916.

Intervener alleged that the Evans Snyder Buell Company had advanced the money and purchased the cattle described in the mortgage for Barker, and that the cattle were at that time unbranded; that Barker agreed to brand them "B" on the left thigh, but in fraud of the mortgagee's rights, he branded them "AB" on the left side behind the shoulder; that Barker had falsely stated in the first two mortgages that he was a resident of Grimes county, Tex., and that the cattle were located there, when in fact he was a resident of Brazos county, Tex., and the cattle located in that county, and that because of these misrepresentations the Evans Snyder Buell Company was deceived and induced to register the mortgages in Grimes county, and that upon discovery of the true facts as to the brand, and of the residence of Barker, and the location of the cattle, the mortgage of February 5, 1916, was taken to protect the mortgagee against the wrong prepetrated.

The jury found in answer to special issues submitted to it that the steers described in plaintiff's mortgage of January 20, 1916, were the same steers as those described in the mortgage given Evans Snyder Buell Company, January 5, 1916; that at the time plaintiff took its mortgage it did not know that the cattle described therein were the same cattle as those described in the mortgage of January 5, 1916; that the plaintiff at the time of the taking of the mortgage did not part with anything of value in consideration for the giving of the mortgage by R. A. Barker.

The district court rendered judgment in favor of plaintiff for the amount of the notes and for a foreclosure of its mortgage lien; subject, however, to the lien of intervener and in favor of intervener for the amount of the notes and foreclosure of the mortgage lien, declaring the same superior to the mortgage lien of plaintiff. Upon appeal, the Court of Civil Appeals affirmed the judgment. 212 S. W. 219.

[1] The mortgages of January 5, 1916, and January 8, 1916, respectively, to the Evans Snyder Buell Company not having been filed in the county where the undisputed evidence shows the cattle were located, nor in the county of mortgagor's residence, were absolutely void as against subsequent mortgagees or lien holders in good faith. Article 5655, Revised Civil Statutes 1911.

Under the term "subsequent mortgagees in good faith" mentioned in the article is meant that the party claiming as such advanced a consideration for the taking of the mortgage and that he had no notice of the unrecorded lien. Bowen v. Wagon Works, 91 Tex. 385, 43 S. W. 872.

[2] The court in submitting the case charged the jury as follows:

"In this case, the burden of proof is on the plaintiff to prove its case by a preponderance of the evidence, and by a preponderance of the evidence is meant the evidence of greater weight and probable degree of truth. Now, bearing in mind the foregoing, you are instructed to decide the following special issues:

"Special Issue No. 1. At the time the plaintiff took its mortgage of date January 20, 1916, on the cattle described in said mortgage, you will find whether or not, as a consideration or part consideration for said mortgage, the said plaintiff, at the time of the taking thereof, parted with anything of value in consideration for the giving of said mortgage by the defendant, R. A. Barker."

To which the jury returned a negative answer.

It is a well-established general rule of the law of evidence that the burden of proof of any particular issue is upon the party who asserts and relies upon it, unless expressly assumed by the other party with whom the issue is joined. The intervener in this case asserts that the plaintiff acquired its lien with notice of superior lien and equitable right of Evans Snyder Buell Company, and that no consideration other than the securing of a pre-existing debt was advanced by the bank for the taking of the mortgage.

Having asserted and relied upon these issues to defeat the rights of plaintiff accruing under its duly filed chattel mortgage which, upon its face, imports a consideration, the burden of proof was upon intervener to establish facts supporting such issue or issues. The fact that, to establish the superiority of intervener's lien, required proof of a material negative allegation—that there was no consideration advanced by plaintiff for the taking of the mortgage—did not change the rule with reference to the burden of proof. It will be observed that plaintiff made no allegation charging that it advanced a valuable consideration for the taking of the mortgage, or that it was without notice of the unrecorded mortgage of the intervener, but was content to rely upon intervener's failure to prove his case. In this respect, the remarks of the Supreme Court in Boswell et al. v. Pannall, 107 Tex. 433, 180 S. W. 593, are applicable. In that case the plaintiff's right to recover the land for which he sued depended upon proof of notice to a subsequent purchaser that the conveyance by plaintiff was obtained by fraud, and that the subsequent purchaser had notice thereof. The defendant Boswell especially pleaded want of notice and the payment of a valuable consideration. The court said:

"The court's charge has direct application to this special defense, and as applied thereto is a correct charge; Barrow voluntarily made and relied upon this defense, and assumed the burden to prove it by a preponderance of the evidence. He need not have done so; he could have relied entirely on the failure of the plaintiff, Pannell, to prove his case, standing upon his bare denial of the plaintiff's allegations of fraud and notice of fraud, and confined his defense to evidence rebutting the plaintiff's case. But Barrow did not see proper to go to trial upon pleadings which would not require the court to charge any defense to the jury except the defense that if the plaintiff, Pannell, had failed to establish his case by a preponderance of evidence, to return a verdict for him."

Intervener seems to have recognized that the burden of proof was upon him, with reference to the establishment of the material allegations of his petition, as he called the vice president of the bank as a witness before resting his case, and examined him concerning the transaction.

By analogy, the rule announced by the Supreme Court in McAlpine v. Burnett, 23 Tex. 650, is applicable here and decisive of the question involved. In that case, the plaintiff sought to foreclose a vendor's lien as against subsequent vendees; there being no recitation in the deeds under which they held calculated to give them notice of the lien. Judge Roberts for the court said:

"The question then is, must the last vendees, Hamlett and Perry, assume the burden of proof, and allege and prove, that they are bona fide purchasers for a valuable consideration, paid before notice of the lien; or, must McAlpine & Company, to follow their lien, allege and prove, that they had notice, or had not paid a valuable consideration for the lot. We are of opinion, that the burden rests upon the party claiming the lien. They are seeking to set up and enforce a tacit equity against persons standing on a legal title, complete and fair on its face; and therefore they must assert and establish the facts which constitute their equity."

It is our conclusion, therefore, that the court erred in charging the jury that the burden of proof was upon the plaintiff in this case.

We found in our research that the decision by the Court of Civil Appeals for the Sixth District in Maloney v. Greenwood et al., 186 S. W. 228, is not in accord with the conclusion we have reached.

[3] The contention that plaintiff's counsel invited the error by demanding the opening and concluding argument is untenable. Plaintiff's counsel objected without avail to the court's action in instructing the jury that the burden of proof was upon it. Having placed the burden of proof upon plaintiff, the court was no doubt actuated in allowing it the opening and concluding argument because of statutory provision, as well as the recognized rule of law, that the party on whom the burden of proof rests is entitled to open and conclude the argument. Article 1953, Revised Civil Statute 1911. This action alone, we think, prompted the court's ruling with reference to the order of argument.

[4] Intervener contends that the consideration by plaintiff was a pre-existing debt, and that therefore this does not constitute a new

consideration. If the consideration, or a part of the consideration, for the mortgage of January 20, 1916, was the extension of the note, then there is a sufficient consideration to entitle the plaintiff bank to protection as a subsequent mortgagee in good faith. This, however, is a question of fact for the jury, under appropriate instructions, to determine. Ingenhuett v. Hunt et al., 15 Tex. Civ. App. 248, 39 S. W. 310, writ of error denied, 93 Tex. 710, 42 S. W. xvi.

We recommend, therefore, that the judgments of the district court and court of Civil Appeals be reversed and remanded to the district court for a new trial.

PHILLIPS, C, J. The judgment recommended in the report of the Commission of Appeals is adopted, and will be entered as the judgment of the Supreme Court.

We approve the holding of the Commission of appeals on the question discussed in its opinion.